**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PHILLIP B. ASHDOWN, | 3:11-cv-00832-LRH (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| PRISON HEALTH SERVICES, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Temporary Restraining Order (Doc. # 6)[1] and Preliminary Injunction (Doc. # 7).[2] Defendants opposed (Doc. # 22) and Plaintiff replied (Doc. # 47). After a thorough review, the court recommends that Plaintiff's motions be denied.

**I. BACKGROUND**

At all relevant times, Plaintiff Phillip B. Ashdown (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 11) at 1.) The allegations giving rise to this action took place while Plaintiff was housed at various NDOC facilities. (*Id.*) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Prison Health Services, NDOC, Dr. David Mar, Kathy King, Dr. Marsha Johns, Dr. Robert Bannister, Veronica VanHorn, John Peery, Jonathan Perry, Dr. Karen Gedney, Jack

---

[1] Refers to the court's docket number.

[2] Doc. # 6 and Doc. # 7 are identical, but were docketed separately by the Clerk's Office.

1  Palmer, and Elizabeth Walsh. (*Id.* at 2-6.)

2  On screening, the court determined that Plaintiff states a colorable claim for deliberate
3  indifference to a serious medical need under the Eighth Amendment in Counts 1, 2, 3, 4, and
4  5. (Doc. # 10 at 3-5.) In Counts 1, 2, 3, and 5, Plaintiff alleges that Defendants failed to
5  provided needed care for his leg braces, failed to properly note in his file the medication refills
6  he was promised, denied promised medical care related to his bowels, and failed to provide
7  needed dentures. (Doc. # 11 at 12-16, 19-20.) As a result, Plaintiff alleges he has suffered severe
8  pain and damage to his mouth, hips, back, legs, feet, colon and neck. (*Id.*) In Count 4, Plaintiff
9  alleges that on October 15, 2010, he fell and split his face open because of his inability to walk
10 properly. (*Id.* at 17-18.) He asserts that defendant Perry refused to send Plaintiff to the
11 hospital for stitches and attempted to treat Plaintiff's injuries with "butterfly band-aids." (*Id.*)
12 According to Plaintiff, he continued to bleed from his face and begged to be taken to the
13 hospital for stitches. (*Id.*)

14 The court also determined that Plaintiff states a colorable claim for retaliation under the
15 First Amendment. (Doc. # 10 at 5-6.) Plaintiff alleges that he suffered retaliatory abuse for
16 seeking medical treatment. (Doc. # 11 at 8.) He claims that he filed kites and grievances in an
17 effort to get medical help, and he is now suffering retribution. (*Id.*) According to Plaintiff, he
18 has been moved to an inappropriately far away housing unit to deter him from seeking further
19 care and from filing grievances. (*Id.*)

20 Plaintiff has filed a Motion for Temporary Restraining Order (Doc. # 6) and Preliminary
21 Injunction (Doc. # 7) seeking an order that he be prescribed the pain medication hydrocodone
22 to prevent further injury. (Doc. # 6, Doc. # 7 at 1.)

23 **II. LEGAL STANDARD**

24 The purpose of a preliminary injunction or temporary restraining order is to preserve
25 the status quo if the balance of equities so heavily favors the moving party that justice requires
26 the court to intervene to secure the positions until the merits of the action are ultimately
27 determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary
28 injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf*

*v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high…This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives…when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that

3

goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Moreover, it is appropriate to treat a non-ex parte motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (2d ed. 2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special

4

requirements.").

## III. DISCUSSION

**A. Likelihood of success on the merits**

In order to be granted a preliminary injunction, Plaintiff must show he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20.

**1. Standard-Eighth Amendment deliberate indifference to serious medical need**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment, and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citation and quotations omitted).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted). "[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). "Budgetary constraints, however, do not justify cruel and unusual punishment." *Id*.

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy

5

of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt*, 865 F.2d at 201 (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion regarding the best course of medical treatment does not amount to deliberate indifference);

6

1 *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a
2 prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To
3 establish that a difference of opinion amounted to deliberate indifference, the inmate "must
4 show that the course of treatment the doctors chose was medically unacceptable under the
5 circumstances" and that the course of treatment was chosen "in conscious disregard of an
6 excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.
7 1996) (citations omitted).

**2. Analysis**

Plaintiff argues that NDOC has repeatedly denied him pain medication, causing him permanent physical damage. (Doc. # 6 at 2.) He asserts that the denial of this medication has caused him to not be able to walk properly, and resulted in a fall on October 16, 2010, causing injuries to his face, back, legs, hips, spine and neck. (*Id.* at 2, 4) He also mentions that he has not been given properly fitted leg braces, although his request for injunctive relief only requests that he be prescribed pain medication. (*Id.* at 2-3.)

Plaintiff's claim of deliberate indifference is belied by his medical records. Defendants are correct that between August 2009 and February 2012, Plaintiff's medical records contain in excess of 100 progress note entries. (Doc. # 24-1 Ex. A.) While Plaintiff contends that Defendants have refused to provide him with his requested pain medication, his medical records indicate that he has been given Tylenol, Tylenol III, or Ibuprofen throughout 2010 and 2011. (Doc. # 24-2 Ex. E, Ex. F.)

On January 19, 2010, Plaintiff was seen for complaints regarding pain from his leg braces. (Doc. # 24-1 Ex. A at 20.) He was prescribed Tylenol until he could be seen by a physician. (*Id.*) It appears that Plaintiff was transferred to LCC around February 9, 2010. (*Id.* at 19.) His chart was reviewed, and it was indicated that his health maintenance was to be continued. (*Id.*)

Plaintiff was transferred to another facility around June 9, 2010. (Doc. # 24-1 Ex. A at 16-17.) He indicated that his leg braces needed to be fixed. (*Id.* at 16.) It is noted that he was to continue receiving Tylenol. (*Id.*)

7

1       A notation on July 9, 2010, indicates that Plaintiff has a history of polysubstance abuse, and that his specialized brace was ordered and issued, but Plaintiff was requesting a re-fitting. (Doc. # 24-1 Ex. A at 15.) It was also indicated that Plaintiff was to continue receiving Tylenol. (*Id*.) The September 2, 2010 entry also states that Plaintiff was to continue his use of Tylenol. (*Id*.)

       On September 15, 2010, Plaintiff was seen regarding his continued use of pain relievers. (Doc. # 24-1 Ex. A at 14.) Plaintiff gave the doctor a copy of a Tylenol with codeine cap and said that he "wants it like everyone else." (*Id*.) Plaintiff's Tylenol dose was increased, but the doctor did not prescribe Tylenol with codeine. (*Id*.)

       On September 17, 2010, Plaintiff went to the specialty clinic requesting an increase in his Tylenol dose. (Doc. # 24-1 Ex. A at 14.) It was confirmed that there would be no change to Plaintiff's medication. (*Id*.)

       On October 21, 2010, Plaintiff was seen by a physician and was noted to be agitated and hostile prior to his appointment. (Doc. # 24-1 Ex. A at 13.) It was also indicated that Plaintiff said, "other people on the yard are getting good stuff for their pain" and Plaintiff was not even though his problem was worse. (*Id*.) It was determined that a renewal of Plaintiff's Tylenol order was appropriate. (*Id*.)

       In June 2011, Plaintiff was admitted to NNCC for treatment of an infection of his hand secondary to punching a wall. Doc. # 24-1 Ex. A at 8-9, 11.) After a nine day admission, Plaintiff was released and Tylenol was re-ordered for his leg pain. (*Id*.)

       On August 8, 2011, Plaintiff went to the clinic and stated that he was out of Tylenol. (Doc. # 24-1 Ex. A at 6.) An appointment was scheduled to discuss pain management, but Plaintiff did not show up. (*Id*.) Plaintiff requested medication again on September 1, 2011. (*Id*.) He was issued Tylenol on October 18, 2011, and an appointment was again scheduled for pain evaluation. (*Id*.)

       On November 2, 2011, Plaintiff was seen by a physician to discuss his complaints of pain. (Doc. # 24-1 Ex. A at 5.) The physician discussed with Plaintiff the dangers of taking Tylenol long-term, and Plaintiff accepted the risk. (*Id*.)

On January 25, 2012, Plaintiff appeared at the clinic stating that he was not receiving the correct amount of Tylenol. (Doc. # 24-1 Ex. A at 3.) It was confirmed that Plaintiff was receiving his medication as prescribed. (*Id.*)

There is no indication anywhere in Plaintiff's records that his medical condition warrants the prescription of a narcotic pain reliever as he is requesting. At most, Plaintiff has demonstrated a difference of opinion between the treatment he is receiving, *i.e.* Tylenol for pain relief, and his requested course of treatment, *i.e.*, narcotic pain relievers. A difference of opinion does not amount to deliberate indifference unless Plaintiff can show that the treatment chosen by NDOC physicians was "medically unacceptable under the circumstances" and that it was chosen "in conscious disregard of an excessive risk" to his health. Plaintiff has simply not met this burden, and there is nothing in his medical records to suggest deliberate indifference under these circumstances.

In sum, Plaintiff has not demonstrated a likelihood of success on the merits to support his request for injunctive relief.

**B. Likelihood of suffering irreparable harm**

Plaintiff must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

While Plaintiff states that he will suffer great harm in the absence of injunctive relief, this is not corroborated by his medical records. This factor weighs against granting injunctive relief.

**C. Balance of hardships and public interest**

A party seeking injunctive relief "must establish…that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).

Plaintiff has not addressed either of these factors in his motion; however, the court finds

9

that these factors weigh against granting injunctive relief because Plaintiff's requested course of treatment is not supported by his medical records.

**D. Conclusion**

The prerequisites for injunctive relief not having been met, Plaintiff's request for injunctive relief should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Temporary Restraining Order (Doc. # 6) and Preliminary Injunction (Doc. # 7).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: April 27, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE