**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| PHILLIP B. ASHDOWN, | 3:11-cv-00832-LRH (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| PRISON HEALTH SERVICES, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Partial Motion to Dismiss. (Doc. # 48.)[1] Plaintiff opposed (Doc. # 70) and Defendants replied (Doc. # 73). In addition, Plaintiff filed a response to Defendants' reply (Doc. # 80) which Defendants have moved to strike (Doc. # 82).

After a thorough review, the court recommends that Defendants' motions (Docs. # 48, # 82) be granted.

### I. BACKGROUND

At all relevant times, Plaintiff Phillip B. Ashdown was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 11) at 1.) The allegations giving rise to this action took place while Plaintiff was housed at various NDOC facilities. (*Id*.)

---

[1] Refers to the court's docket number.

Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Prison Health Services, NDOC, Dr. David Mar, Kathy King, Dr. Marsha Johns, Dr. Robert Bannister, Veronica VanHorn, John Peery, Jonathan Perry, Dr. Karen Gedney, Jack Palmer, and Elizabeth Walsh. (*Id.* at 2-6.)

On screening, the court determined that Plaintiff states a colorable claim for deliberate indifference to a serious medical need under the Eighth Amendment in Counts 1, 2, 3, 4, and 5. (Doc. # 10 at 3-5.) In Counts 1, 2, 3, and 5, Plaintiff alleges that Defendants failed to provided needed care for his leg braces, failed to properly note in his file the medication refills he was promised, denied promised medical care related to his bowels, and failed to provide needed dentures. (Doc. # 11 at 12-16, 19-20.) As a result, Plaintiff alleges he has suffered severe pain and damage to his mouth, hips, back, legs, feet, colon and neck. (*Id.*) In Count 4, Plaintiff alleges that on October 15, 2010, he fell and split his face open because of his inability to walk properly. (*Id.* at 17-18.) He asserts that defendant Perry refused to send Plaintiff to the hospital for stitches and attempted to treat Plaintiff's injuries with "butterfly band-aids." (*Id.*) According to Plaintiff, he continued to bleed from his face and begged to be taken to the hospital for stitches. (*Id.*)

The court also determined that Plaintiff states a colorable claim for retaliation under the First Amendment. (Doc. # 10 at 5-6.) Plaintiff alleges that he suffered retaliatory abuse for seeking medical treatment. (Doc. # 11 at 8.) He claims that he filed kites and grievances in an effort to get medical help, and he is now suffering retribution. (*Id.*) According to Plaintiff, he has been moved to an inappropriately far away housing unit to deter him from seeking further care and from filing grievances. (*Id.*)

Defendants have filed a Partial Motion to Dismiss arguing: (1) Plaintiff failed to properly exhaust available administrative remedies with respect to his allegations that NDOC medical providers and officials have been deliberately indifferent to his need for prescription medication refills, dentures, or medical care associated with his bowel complaints; (2) Plaintiff failed to exhaust available administrative remedies with respect to his allegations that he was treated with deliberate indifference following a fall on October 16, 2010; (3) Plaintiff failed to

exhaust available administrative remedies with respect to his retaliation claim; (4) NDOC should be dismissed as it is a state agency not subject to liability under section 1983; and (5) Plaintiff's state tort negligence claim should be dismissed pursuant to Nevada Revised Statute § 41A.071. (Doc. # 48.)

## II. DEFENDANTS' MOTION TO STRIKE

Defendants move to strike Plaintiff's filing (Doc. # 80) which is in essence a sur-reply responding to Defendants' reply brief. (Doc. # 82.)

While Federal Rule of Civil Procedure 12(f) provides authority for the court to strike "redundant, immaterial, impertinent, or scandalous matter[s]" from a "pleading," it does not authorize the court to strike material contained in other documents filed with the court. *See* Fed. R. Civ. P. 12(f). However, courts have inherent powers to control their dockets, *see Ready Transp., Inc. v. AAR Mfg, Inc.*, 627 F.3d 402, 404 (citations omitted), and to "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "This includes the power to strike items from the docket as a sanction for litigation conduct." *Ready*, 627 F.3d at 404 (citations omitted); *see also Wallace v. U.S.A.A. Life General Agency, Inc.*, -- F.Supp.2d--, at *5 (D. Nev. March 29, 2012).

The Local Rules provide for the filing of a motion, opposition, and reply brief. L.R. 7-2. Local Rule 7-2 does not contemplate the filing of a brief in response to a reply. Accordingly, the court finds that Defendants' Motion to Strike (Doc. # 82) Plaintiff's filing characterized as an "opposition" to Defendants' reply (Doc. # 80) should be granted.

## III. EXHAUSTION

**A. LEGAL STANDARD**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has clarified that exhaustion cannot

3

be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion.' Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 48 at 4; Doc. # 48-1 at 5-24 (Ex. A-1); Doc. # 48-1 at 26-37 (Ex. A-2); Doc. # 48-1 at 39-49 (Ex. A-3).) Under the version of AR 740 effective during the time period in question, the procedure consisted of: (1) an informal level grievance; (2) a first level grievance;

4

and (3) a second level grievance. (*Id.*) Inmates are permitted to address only one claim, issue, circumstance or action in each grievance they file. (*Id.* Ex. A-1 at 7; Ex. A-2 at 34; Ex. A-3 at 47.)

**B. DISCUSSION**

According to Defendants, between July 1, 2009, and March 14, 2012, Plaintiff filed more than fifty grievances at the informal level of review. (Docs. # 48 at 5; # 48-2 (Navarro Decl.) ¶ 7.) Of those fifty grievances, Plaintiff proceeded to the second level of review with respect to only eleven grievances. (*Id.*) Of the eleven grievances that Plaintiff submitted through the second level of review, five were appeals from disciplinary hearings that are unrelated to this litigation (grievances 2006-29-29844, 2006-29-26361, 2006-29-26354, 2006-29-25838, 2006-28-88565). (Doc. # 48 at 5; Doc. # 48-2 (Navarro Decl.) ¶ 12.) One of the remaining six grievances Plaintiff appealed through the second level relates to being required to pay for dental care and another relates to the alleged destruction of a C.D. player, and are not relevant to the court's inquiry here (grievances 2006-29-28037 and 2006-29-17532). (Doc. # 48 at 5; Doc. # 48-2 (Navarro Decl.) ¶¶ 13-14.) The remaining grievances that Plaintiff appealed through the second level are as follows: 2006-28-90436; 2006-29-32146; 2006-29-27311; and 2006-29-29157. (*See* Doc. # 48 at 5; Doc. # 48-2 (Navarro Decl.) ¶¶ 8-11.) Defendants maintain that with respect to these grievances, they served only to exhaust Plaintiff's administrative remedies concerning his allegation that his leg brace needed to be repaired. (Doc. # 48 at 5-11.)

**1. Grievance 2006-28-90436**

Plaintiff submitted his informal level grievance on January 8, 2010, stating that he needed assistance in getting his leg braces adjusted. (Doc. # 48-2 (Navarro Decl.) ¶ 8; Doc. # 48-2 (Ex. C) at 6-7.) In response, Plaintiff was told that he was scheduled to see someone at Northern Nevada Correctional Center regarding his leg braces. (Doc. # 48-2 (Ex. C) at 6.)

Plaintiff submitted a first level grievance related to adjustment of his leg braces on March 2, 2010. (Doc. # 48-2 (Ex. C) at 9-11.) Plaintiff did include a sentence regarding complaints that he needed dentures and that he was not having solid bowel movements, but the focus of the first level grievance was on Plaintiff's request that his leg braces be adjusted.

5

1 (*Id.* at 9-10.) In response, Plaintiff was told that minor adjustments had been performed to Plaintiff's leg braces which should make them satisfactory until the panel could review him for re-fitting. (*Id.* at 13.)

Plaintiff submitted a second level grievance on September 25, 2010. (*Id.* at 14-16.) Plaintiff states that his leg braces were never adjusted or fixed. (*Id.*) In his second level grievance, Plaintiff raises for the first time a complaint that he was not receiving his proper prescribed pain medication. (*Id.* at 16.) The first level response was upheld by the second level grievance responder. (*Id.* at 18.)

Defendants are correct that while this grievance may serve to exhaust Plaintiff's administrative remedies with respect to his leg braces, it does not exhaust his administrative remedies with respect to his Eighth Amendment claim related to medication refills, his bowels, dentures, and injuries suffered as a result of a fall on October 15, 2011. Nor does it exhaust his administrative remedies with respect to his retaliation claim. While Plaintiff makes brief reference to his bowel movements and dentures in his first level grievance, and to his pain medication in this second level grievance, AR 740 required that Plaintiff present all documentation and factual allegations available to the inmate at the informal level. (*See* Doc. # 48-1 at 30, 43.) Moreover, pursuant to AR 740, a grievance may only address one issue at a time. (*Id.* at 34, 47.)

**2. Grievance 2006-29-32146**

Plaintiff submitted his informal level grievance in September, 2011. (Docs. # 48 at 7-8; # 48-2 (Navarro Decl.) ¶ 9; Doc. # 48-3 (Ex. D) at 2-3.) In this grievance, Plaintiff complained that his medicines were incorrect and requested that he be provided with Pepto Bismol, a Flovent inhaler, Tums, a skin ointment, Prilozec, and pain medication. (*Id.*) In response, Plaintiff was told that pill call would make his medication available to him. (Doc. # 48-3 at 9.)

On November 3, 2011, Plaintiff submitted a first level grievance. (Doc. # 48-3 (Ex. D) at 11-12.) Plaintiff once again stated that his medications were not correct and that he was being denied Tylenol. (*Id.*) He requested that he be moved from unit two to unit one so that he could be closer to pill call. (*Id.*) In response, Plaintiff was told that prescriptions were at the

1  discretion of the physician, and that an inmate has no choice of placement within the prison.
2  (*Id.* at 13.)

3  Plaintiff submitted his second level grievance on January 9, 2012. (Doc. # 48-3 (Ex. D)
4  at 14-15.)

5  Defendants are correct that Plaintiff submitted his Complaint for filing on November
6  17, 2011, nearly two months *before* the date of his second level grievance. (*See* Doc. # 1.)

7  The Ninth Circuit has made it clear that the PLRA requires exhaustion *prior* to
8  initiation of the lawsuit. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per
9  curiam) (exhaustion requirement does not permit prisoner to file complaint addressing non-
10 exhausted claims even if he exhausts while case is pending); *see also Vaden v. Summerhill*,
11 449 F.3d 1047, 1050-51 (9th Cir. 2006) ("The bottom line is that a prisoner must pursue the
12 prison administrative process as the first and primary forum for redress of grievances. He may
13 initiate litigation in federal court only after the administrative process ends and leaves his
14 grievances unredressed. It would be inconsistent with the objectives of the statute to let him
15 submit his complaint any earlier than that."). Allowing Plaintiff to proceed with claims without
16 having exhausted *prior to* filing his complaint would create an end-run around the PLRA,
17 which provides that "[n]o action shall be brought with respect to prison conditions...until such
18 administrative remedies as are available are exhausted." 28 U.S.C. § 1997(e); *see also Vaden,*
19 449 F.3d 1050-51*; McKinney,* 311 F.3d at 1199-1201. Accordingly, this grievance cannot be said
20 to have properly exhausted Plaintiff's administrative remedies.

21  **3. Grievance 2006-29-27311**

22  On July 23, 2011, Plaintiff filed an emergency grievance form stating that his pain
23 medication was stopped and requesting that he immediately receive Tylenol or acetaminophen
24 or he would file another lawsuit. (Doc. # 48-2 (Navarro Decl.) ¶ 10; Doc. # 48-4 (Ex. E) at 2.)
25 In response, prison officials told him that his Tylenol prescription expired on July 22, 2011, but
26 he should come to sick call the next day to be evaluated. (Doc. # 48-4 (Ex. E) at 2.)

27  Plaintiff disagreed with the response and appealed his emergency grievance to the
28 informal level, stating that his medication was stopped for no reason. (Doc. # 48-4 (Ex. E) at

7

1 5-6.) In response, Plaintiff was told that his medication was stopped because he was taking too many, and his request to reorder Tylenol was denied until Plaintiff could come in to be reviewed. (*Id.* at 7.)

Plaintiff then filed a first level grievance. (Doc. # 48-4 (Ex. E) at 8-9.) Plaintiff asserted that he was not taking too much Tylenol. (*Id.*) The grievance was denied at the first level. (*Id.* at 10.) Plaintiff checked the box that he disagreed with the response, but did not sign the form, which informed him, in all caps: "FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES." (*Id.* at 8.)

On November 16, 2011, Plaintiff filed his second level grievance. (Doc. # 48-4 (Ex. E) at 11-12.) Plaintiff reiterated that he was not provided proper medication. (*Id.*) The second level grievance was returned to Plaintiff as improper because he failed to sign the response to the first level grievance. (*Id.* at 13.)

Defendants are again correct that Plaintiff submitted his lawsuit for filing on November 17, 2011, prior to completing the grievance process. In this instance, he did not allow NDOC officials to respond to his second level grievance before filing his Complaint, assuming that he had submitted a signed response to the first level grievance and resubmitted his second level grievance. As set forth above, the PLRA requires exhaustion *prior* to initiation of the lawsuit. *See McKinney*, 311 F.3d at 1199-1201. Accordingly, this grievance does not serve to properly exhaust the claims that are the subject of this motion.

**4. Grievance 2006-29-29157**

Plaintiff submitted an informal level grievance on August 10, 2011, stating that he wanted all of his medication reinstated. (Doc. # 48-2 (Navarro Decl.) ¶ 11; Doc. # 48-4 (Ex. F) at 15-17.) He also complained about being charged $8 to have his medication reactivated. (*Id.*) In response, Plaintiff was told that all of his medication had been ordered for one year, and that he could pick up his Tylenol order at the keep-on-person window, and he would not be charged for medication. (*Id.* at 19.)

Plaintiff filed a first level grievance on September 16, 2011, asserting that he was not

8

1  receiving enough Tylenol and that he needed an acetaminophen-codeine combo. (Doc. # 48-4
2  (Ex. F) at 20-22.) In response, Plaintiff was told that the doctor would not give him the
3  unlimited medication he was seeking, and if he had difficulty, to ask to be seen by a provider.
4  (*Id.* at 23.)

5  Plaintiff filed a second level grievance dated November 30, 2011. (Doc. # 48-4 (Ex. F)
6  at 24.)

7  Once again, Defendants are correct that Plaintiff failed to complete the grievance
8  procedure *prior to* filing his Complaint. Therefore, the court finds that this grievance does not
9  serve to exhaust the claims that are the subject of this motion. *See McKinney*, 311 F.3d at 1199-
10  1201.

11  **C. CONCLUSION**

12  First, to the extent Plaintiff argues in his opposition that he was not required to complete
13  the grievance process because a remedy would not be afforded to him (Doc. # 70 at 4), the
14  court rejects this proposition. The law is clear that an inmate must exhaust administrative
15  remedies regardless of the relief offered through administrative procedures. *Booth v. Churner*,
16  532 U.S. 731, 825 (2001).

17  Second, Defendants are correct that pursuant to AR 740, if a prison response to a
18  grievance is overdue, the inmate has the option to go ahead with filing the next level grievance
19  once the response becomes overdue or waiting for the overdue response. (Doc. # 48-1 at 28,
20  41.) Presumably, if a response to a second level grievance is overdue, the inmate need only wait
21  for the time period for a response to expire before he can file suit. Here, in two instances where
22  Plaintiff filed his lawsuit before the grievance process was completed, he filed his lawsuit before
23  *he* even submitted his second level grievance. (*See* Doc. # 48-3 (Ex. D) at 14-15; Doc. # 48-4
24  (Ex. F) at 24.) In the third instance, Plaintiff filed his lawsuit before the expiration of the
25  period of time within which NDOC had to respond to the second level grievance. (*See* Doc. #
26  48-4 (Ex. E) at 11-12.) Therefore, in each of these instances he improperly filed suit before the
27  grievance process was complete.

28  In sum, the court finds that Plaintiff failed to properly exhaust available administrative

9

1  remedies with respect to his Eighth Amendment claims that NDOC medical providers and
2  officials have been deliberately indifferent to his need for prescription medication refills,
3  dentures, bowels, and injuries following a fall on October 16, 2010. Plaintiff likewise failed to
4  exhaust available administrative remedies with respect to his retaliation claim. Accordingly,
5  the court recommends that these claims be dismissed without prejudice. As a result, the only
6  constitutional claim that survives this motion is Plaintiff's Eighth Amendment claim for
7  deliberate indifference related to Plaintiff's leg braces.

### IV.  STATE LAW MEDICAL MALPRACTICE CLAIM

9   To the extent Plaintiff's Complaint can be construed as asserting a state law claim for
10  medical malpractice (*see* Doc. # 11 at 1, stating that Plaintiff requests supplemental jurisdiction
11  for a state negligence tort claim for medical negligence), the court finds that this claim must
12  be dismissed as a result of Plaintiff's failure to comply with Nevada Revised Statute 41A.071.
13  Nevada law provides:

> If an action for medical malpractice or dental malpractice is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or who has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.

17  Nev. Rev. Stat. 41A.071.
18   To the extent Plaintiff is asserting a claim for medical malpractice he failed to submit
19  an affidavit of merit when he filed suit. The Nevada Supreme Court has held that a complaint
20  filed without the supporting affidavit is "void ab initio, meaning it is of no force and effect."
21  *Washoe Med. Ctr. v. Second Judicial Dist. Ct.*, 148 P.3d 790, 794, 122 Nev. 1298 (2006).
22  Such a complaint "does not legally exist and thus it cannot be amended." *Id*. Accordingly,
23  Plaintiff's state law claim for medical malpractice should be dismissed without leave to amend.

### V.  NDOC

25   Plaintiff names NDOC as a defendant in this action.
26   A governmental agency that is an arm of the state is not a person subject to suit under
27  section 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flint v. Dennison*, 488 F.3d 816,
28  824-25 (9th Cir. 2007). A state's department of corrections is an arm of the state, and

1  therefore cannot be sued in a section 1983 action for damages. *See Alabama v. Pugh*, 438 U.S.
2  781, 782 (1978). Moreover, Eleventh Amendment immunity bars section 1983 actions for
3  damages against state agencies, as well as those where the state itself is named as a defendant,
4  and where state officials are sued in their official capacity. *P.R. Aqueduct & Sewer Auth. v.*
5  *Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.
6  1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh
7  Amendment immunity).

8  Therefore, NDOC should be dismissed from this action with prejudice.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order as follows:

(1) **GRANTING** Defendants' Motion to strike (Doc. # 82) and **STRIKING** Plaintiff's filing set forth at Doc. # 80;

(2) **DISMISSING WITHOUT PREJUDICE** Plaintiff's Eighth Amendment claims that NDOC medical providers and officials were deliberately indifferent to his need for prescription medication refills, dentures, bowels, and injuries following a fall on October 16, 2010;

(3) **DISMISSING WITHOUT PREJUDICE** Plaintiff's retaliation claim;

(4) **DISMISSING WITH PREJUDICE** the Nevada Department of Corrections;

(5) **DISMISSING WITHOUT LEAVE TO AMEND** Plaintiff's state law claim for medical malpractice.

///
///
///
///
///
///
///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: September 18, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE